1  MELINDA HARDY (Admitted to DC Bar)
   SARAH HANCUR (Admitted to DC Bar)
2  U.S. Securities and Exchange Commission
   Office of the General Counsel
3  100 F Street, NE, Mailstop 9612
   Washington, DC 20549
4  Telephone:  202.551.5194
   Facsimile:  202.772.9263
5  hardym@sec.gov
   hancurs@sec.gov
6

7  *Attorneys for Respondent*

8

9              **IN THE UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10                     **OAKLAND DIVISION**

11

12  JOHN DOE,                          Case No. 4:11-cv-04082-CW

13          Movant,                    **U.S. SECURITIES AND EXCHANGE**
                                       **COMMISSION'S OPPOSITION TO JOHN**
14          v.                         **DOE'S MOTION TO QUASH**
                                       **ADMINISTRATIVE SUBPOENA AND**
15  U.S. SECURITIES AND EXCHANGE       **MEMORANDUM IN SUPPORT THEREOF**
    COMMISSION,
16                                     Date:  TBD
            Respondent.               Time:  TBD
17                                     Place: Oakland Courthouse,
                                              Courtroom 2 - 4th Floor
18

19

20

21

22

23

24

25

26

27

28

CASE NO. 4:11-CV-04082-CW

**I.      Introduction.**

Respondent U.S. Securities and Exchange Commission ("SEC") hereby opposes Movant John Doe's motion to quash the administrative subpoena issued on June 20, 2011 to Google, Inc. ("Google") in connection with the SEC's investigation of Jammin Java Corp. ("Jammin Java") and trading in its securities.  In the course of the investigation, the SEC issued a subpoena to Google seeking subscriber information for an email account linked to an apparent "pump and dump" scheme.  Subscriber information is a crucial element of investigations into the use of websites, newsletters, blogs, and other online media used to facilitate fraud.  The SEC's information request is narrowly tailored to elicit only subscriber information and is authorized by Section 2703(c)(2) of the Electronic Communications Privacy Act (the "ECPA").

In his motion, Movant misstates the applicable legal standard and seeks to prevent Google from providing information that the SEC has reason to believe will aid its investigation of potential securities law violations.  In doing so, Movant argues that the SEC's subpoena should be quashed because he has a First Amendment right to anonymous speech.  However, the First Amendment right to anonymous speech does not provide a basis to quash the SEC's subpoena because the SEC is conducting a legitimate law enforcement investigation, the limited information it seeks is rationally related to a compelling governmental interest, and it is using the least restrictive means available. *See Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 349-350 (9th Cir. 1988).

**II.     Statement of Facts.**

On May 13, 2011, the SEC issued a formal order of private investigation entitled *In the Matter of Jammin Java Corp.*, Commission File No. C-07826 (the "Formal Order").  De Jong Decl. ¶ 2.  The Formal Order directs the staff of the SEC (the "Staff") to investigate potential violations of Sections 5(a), 5(c), 17(a), and 17(b) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. §§ 77e(a),(c), 77q(a),(b)), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5), by Jammin Java and its officers, directors, employees, partners, subsidiaries, consultants, partners, and affiliates as well as "other persons or entities"  relating to their involvement in an apparent "pump and dump" scheme.  De Jong Decl. ¶¶ 3-4.  "Pump and dump" schemes generally "involve the touting of a company's

1    stock (typically microcap companies) through false and misleading statements to the marketplace.

2    After pumping the stock, fraudsters make huge profits by selling their cheap stock into the market."

3    *United States v. Zolp*, 479 F.3d 715, 717 n.1 (9th Cir. 2007) (citing SEC, Fast Answers: Pump and

4    Dump, at http://www.sec.gov/answers/pumpdump.htm).

5         The Staff is investigating whether, through the instant scheme, thousands of investors were

6    defrauded out of millions of dollars when they purchased shares of Jammin Java securities at

7    artificially inflated prices based upon online newsletters that were widely disseminated through blast

8    emails, websites, and investor message boards.  De Jong Decl. ¶ 5.  Specifically, Jammin Java's share

9    price rose from $0.17 in December 2010 to $6.35 on May 12, 2011, after which it plummeted to less

10   than a dollar per share.  De Jong Decl. ¶ 6.  The increase in Jammin Java's share price occurred

11   notwithstanding the fact that Jammin Java's public filings during that time period reflected that

12   Jammin Java was a shell company that had generated no revenues and had an accumulated deficit of

13   $511,760.  De Jong Decl. ¶ 7.

14        The rapid increase in Jammin Java's share price coincided with the wide dissemination of

15   online newsletters touting Jammin Java's stock.  De Jong Decl. ¶ 8.  The Staff is investigating

16   whether the online newsletters contained materially misleading information about Jammin Java and

17   its stock and/or failed to accurately disclose the disseminators' financial interests in Jammin Java and

18   the compensation paid to them by Jammin Java, its affiliates, and/or others.  De Jong Decl. ¶ 9.

19        The Staff has been seeking information about who sent and is responsible for the newsletters

20   that touted Jammin Java's stock and has obtained information indicating that the email address

21   "marketingacesinc@gmail.com" potentially belongs to a touter in the "pump and dump" scheme.  De

22   Jong Decl. ¶ 10.[1]  To identify that person and his/her role in the "pump and dump" scheme, on June

23   20, 2011, the Staff issued an administrative subpoena in accordance with the ECPA to Google

24   requesting identifying information regarding the customer with the email address

25   _____

26   [1]  The SEC will provide additional information to the Court concerning its investigation, if the Court
     deems it necessary.   However, to the extent that additional information is required, the SEC requests
     that it be provided to the Court on an *in camera* basis because the Jammin Java investigation remains

27   on-going, De Jong Decl. ¶ 5, and "[i]nformation or documents obtained by the Commission in the
     course of any investigation or examination, unless made a matter of public record, shall be deemed

28   non-public."  17 C.F.R. § 203.2.

"marketingacesinc@gmail.com."  De Jong Decl. ¶ 11.  The ECPA does not require notice to the subscriber when the government seeks only subscriber information.  18 U.S.C. § 2703(c)(2).  The subpoena requires Google to produce, in relevant part:

> 1. Documents sufficient to identify the subscriber's name, account number, current residential or billing address(es), telephone number(s), credit card numbers and checking account numbers, and other subscriber number or identity, including, but not limited to, the Internet Protocol addresses used by the subscriber when registering for the e-mail address "marketingacesinc@gmail.com", and when sending and retrieving messages from that address.
>
> 2. All documents that relate to, refer to, or concern communications between Gmail and the subscriber to the e-mail address "marketingacesinc@gmail.com" where Gmail was the sender or intended recipient of the communication.

*See* Exhibit A to Doe Decl. in support of Motion to Quash.  The subpoena does not seek the content of any email sent to or from "marketingacesinc@gmail.com" except those sent to or from Google.  In the subpoena, the Staff cautions Google that under the ECPA, 18 U.S.C. §§ 2510 *et seq.*, Google should "not provide certain wire or electronic communications such as the contents of e-mails of your customers, subscribers, or other users, unless you are either the sender or intended recipient of the communication."  *Id.*

On June 24, 2011, Google sent a letter to the Staff advising it that Google intended to provide notice of the subpoena to its customer on June 28, 2011 and that it intended to give the customer 20 days to either object or file a motion to quash.  De Jong Decl. ¶ 12.  On August 16, 2011, at the request of Movant's counsel, the Staff provided Movant's counsel with a copy of the Formal Order.  De Jong Decl. ¶ 13.  On August 18, 2011, Movant filed the instant motion to quash, arguing that the subpoena violates Movant's First Amendment right to anonymous speech.

**III.    Argument.**

   **A.    The SEC Properly Issued an Administrative Subpoena to Google under the Electronic Communications Privacy Act.**

The subpoena to Google for Movant's subscriber information is authorized by the ECPA.  Title II of the ECPA allows a "governmental entity," such as the SEC, to obtain certain types of information from providers of electronic communications and storage services.  *See* 18 U.S.C. §§

1    2701-12.  The ECPA provides that the government may use an administrative subpoena when

2    seeking to obtain basic subscriber information, such as the SEC seeks here.  18 U.S.C. § 2703(c)(2).

3    Pursuant to Section 2703(c)(2), a "provider of electronic communication service or remote computing

4    service shall disclose to a governmental entity" the:

> (A)    name;
> (B)    address;
> (C)    local and long distance telephone connection records, or records
>         of session times and durations;
> (D)    length of service (including start date) and types of service
>         utilized;
> (E)    telephone or instrument number or other subscriber number or
>         identity, including any temporarily assigned network address;
>         and
> (F)    means and source of payment for such service (including any
>         credit card or bank account number),

> of a subscriber to or customer of such service when the governmental
> entity uses an administrative subpoena authorized by a Federal or State
> statute. . . .

13   The statute then explicitly provides that a "governmental entity receiving records or

14   information under this subsection is *not required to provide notice* to a subscriber or customer."  18

15   U.S.C. § 2703(c) (emphasis added); s*ee also SAMS v. Yahoo!, Inc.*, No. CV-10-5897, 2011 U.S. Dist.

16   LEXIS 53202, at *20 (N.D. Ca. May 18, 2011) (non-content-based information may be obtained

17   under the ECPA without customer notice).  At least one district court has held that customers and

18   subscribers do not have standing to challenge a subpoena that only requests subscriber identifying

19   information.  *See In re Section 2703(d) Order*, 10-GJ-3793, 2011 U.S. Dist. LEXIS 25322, at *7

20   (E.D. Va. Mar. 11, 2011).  By failing to address the ECPA, Movant implicitly concedes that the

21   subpoena complies with its provisions.

**B.      The Disclosure of Movant's Subscriber Information Would Not Violate the First
          Amendment.**

24   Movant has not argued, and no court has found, that any provision of the ECPA violates the

25   First Amendment.  Further, Movant's claim that the disclosure of his identity to the SEC would

26   violate his First Amendment right to anonymous speech does not outweigh the government's interest

27   in obtaining identifying information to further, what Movant does not contest to be, a legitimate

28   investigation into potentially fraudulent conduct.  "The Supreme Court has recognized that some

1    governmental interests are sufficiently compelling to outweigh the infringement of [F]irst

2    [A]mendment rights." *Brock*, 860 F.2d at 349-350 (citing *Buckley v. Valeo*, 424 U.S. 1, 66 (1976)).

3    In particular, "the First Amendment does not shield fraud," *Illinois ex rel. Madigan v. Telemarketing*

4    *Assocs., Inc.*, 538 U.S. 600, 612 (2003), and cannot be used to "escape lawful governmental

5    investigation." *Brock*, 860 F.2d at 349.

6        More specifically, the Ninth Circuit has held that with respect to an administrative subpoena

7    issued during the course of an investigation, an individual who believes his First Amendment rights

8    may be violated by compliance must make a "prima facie showing of arguable [F]irst [A]mendment

9    infringement." *Id.*   Once a prima facie case is established, the burden shifts to the government to

10   show (1) "that the information sought through the subpoena[] is rationally related to a compelling

11   governmental interest," and (2) that "the government's disclosure requirements are the 'least

12   restrictive means' of obtaining the desired information." *Id.* at 350. Courts are "willing to tolerate

13   some chilling effect if it is necessary to do so in order to protect a compelling governmental interest."

14   *Dole v. Serv. Employees Union*, 950 F.2d 1456, 1461 (9th Cir. 1991).[2]

15        As a preliminary matter, Movant has failed to establish a prima facie case that the SEC's

16   subpoena to Google infringes upon his First Amendment right to anonymous speech.[3] Movant

17   asserts that he uses the "marketingacesinc@gmail.com" email account "anonymously in order to

18   protect his privacy while expressing his opinion," Doe Memorandum at 5, but fails to explain how

19   this alleged anonymous speech is infringed upon by the SEC's request for *subscriber identifying*

20

21   [2] This standard is similar to that required in grand jury investigations.  Courts employ various tests when confronted with motions to quash grand jury subpoenas raising First Amendment issues.  For

22   example, courts will reject a First Amendment challenge to a grand jury subpoena provided the subpoena (i) serves a compelling state interest, (ii) requests evidence that is substantially related to

23   the investigation, and (iii) does not unduly burden the witness.  *See Bursey v. United States*, 466 F.2d 1059, 1083 (9th Cir. 1972).  Thus, grand juries often obtain information that may raise First

24   Amendment issues.  *See, e.g., Branzburg v. Hayes*, 408 U.S. 665, 682 (1972) ("Citizens generally are not constitutionally immune from grand jury subpoenas; and neither the First Amendment nor any

25   other constitutional provision protects the average citizen from disclosing to a grand jury information that he has received in confidence.").

26   [3] While the Supreme Court has held that the First Amendment protects anonymous speech, that right is limited.  *Anonymous Online Speakers v. United States Dist. Court*, No. 09-71265, 2011 U.S. App.

27   LEXIS 487, at *6 (9th Cir. Jan. 7, 2011).  The nature of the limits depends on the nature of the speech; political speech is protected more than commercial speech.  *Id.*  Fraudulent speech is not

28   protected.  *See, e.g., U.S. v. Stevens*, 130 S. Ct. 1577, 1584 (2010).

1   *information* in an ongoing, confidential law enforcement investigation relating to an apparent "pump

2   and dump" scheme.[4]

3           Assuming arguendo that Movant has made his prima facie showing, the motion to quash

4   should be denied because the SEC satisfies its burden.  First, the information the Staff seeks is

5   rationally related to a compelling government interest.  Sections 21(a) and 21(b) of the Exchange Act

6   authorize the SEC to "make such investigations as it deems necessary to determine whether any

7   person has violated, is violating, or is about to violate any provision of this chapter [or] the rules or

8   regulations thereunder" and to demand to see any papers "the Commission deems relevant or material

9   to the inquiry."  15 U.S.C. §§ 78u(a), (b).  The Supreme Court has held that the "provisions vesting

10  the SEC with the power to issue and seek enforcement of subpoenas are expansive."  *S.E.C. v. Jerry*

11  *T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984).  In the course of the SEC's investigation of Jammin Java

12  and the manipulation of its securities, the Staff identified Movant's email address as one that

13  potentially belongs to a touter in the "pump and dump" scheme and issued an administrative

14  subpoena to determine the identity of the potential touter.  The identity is directly related to the

15  SEC's investigation and could be crucial to taking action to address a multi-million dollar

16  fraud.

17          Movant's only argument addressing this issue is that he was not named in the SEC's Formal

18  Order.  *See* Doe Memorandum at 5.  However, there is no restriction on the SEC's power to subpoena

19  third parties not named in the order of investigation who may have materials relevant to the inquiry.

20  *See RNR Enters. v. SEC*, 122 F.3d 93, 98 (2d Cir. 1997) ("Neither the securities laws nor the

21  Constitution impose a distinct requirement that, before issuing the subpoena, the SEC issue a Formal

22  Order authorizing by name an investigation of [a particular party].").  In any event, the Formal Order

23  broadly encompasses all "consultants, partners, and affiliates" as well as "other persons or entities"

24  engaged in the apparent fraud and thus authorizes this subpoena.  De Jong Decl. ¶ 4.

25

26
    _____

27  [4]  While Movant does not make any Fourth Amendment claims, federal courts have uniformly held
    that "subscriber information provided to an internet provider is not protected by the Fourth
    Amendment's privacy expectation."  *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008)
28  (collecting cases).

1    Further, the SEC used the least restrictive means, consistent with the ECPA, to obtain the

2    identity of the holder of the email address by seeking only subscriber information.  This information

3    is directly related and critical to the Jammin Java investigation because it is necessary that the Staff

4    determine who sent and is responsible for the newsletters that touted Jammin Java's stock as part of

5    the "pump and dump" scheme.  Thus, the SEC has satisfied its burden.

6         **C.    Movant's Arguments Are Inapposite.**

7         Instead of applying the test set forth in *Brock*, Movant claims that "to overcome Doe's free

8    speech rights, the SEC must produce evidence that:  1) The SEC's investigation is supported by

9    sufficient evidence; 2) Doe's identity is relevant to the investigation; 3) The SEC's investigative

10   needs outweigh Doe's First Amendment rights; [and] 4) The SEC provided notice to Doe of the

11   subpoena."  Doe Memorandum at 4.  We are not aware of any precedent suggesting that a

12   government agency in the early stages of an investigation is required to meet these requirements.  The

13   case Movant relies on is *SaleHoo Group, Ltd. v. ABC Co.*, 722 F. Supp.2d 1210, 1216 (W.D. Wash.

14   2010), but even that case does not support Movant's argument that the SEC must meet these

15   requirements.[5]

16        Movant's suggestion that the Court apply either *SaleHoo* or Movant's higher standard is

17   inappropriate because Movant fails to appreciate the distinction between civil discovery and

18   enforcement of administrative subpoenas.  The subpoena at issue in this action was served by a

19   governmental entity as part of an on-going enforcement investigation after the relevant email address

20   was identified as possibly belonging to a "touter" in a potential fraudulent scheme.  De Jong Decl. ¶¶

21   2-4, 10-11.  In applying his four part test, Movant suggests that the SEC must submit "evidence

22   sufficient to defeat a motion for summary judgment," Doe Memorandum at 5, when the SEC is still

23   in process of determining what federal securities laws violations, if any, have even been committed

24   and by whom.  That approach would block legitimate government investigations into conduct that is

25   plainly not protected by the First Amendment.  *See Jerry T. O'Brien*, 467 U.S. at 749 (recognizing

---

26   [5]  In *SaleHoo*, an internet marketing company filed a civil lawsuit against an anonymous internet
     domain name operator alleging defamation and various intellectual property claims.  The subpoena at
27   issue in *SaleHoo* was served by the plaintiff on a domain registrant in order to determine the identity
     of the defendant who operated an anonymous website that criticized the plaintiff's business.  722 F.
28   Supp.2d at 1212-13.

1   that the SEC often must undertake investigations in suspicious securities transactions without any

2   specific knowledge of the events or parties at issue).  Where, as here, the government has identified a

3   clear reason for conducting an investigation and served a subpoena seeking very limited information

4   about an email address connected to conduct that appears to be illegal, quashing the subpoena would

5   do far more to protect illegal conduct than to protect First Amendment rights.  "The First Amendment

6   does not shield fraud," *Telemarketing Assocs., Inc.*, 538 U.S. at 612, and "[p]unishing fraud, whether

7   it be common law fraud or securities fraud, simply does not violate the First Amendment."  *SEC v.*

8   *Pirate Investor LLC*, 580 F.3d 233 (4th Cir. 2009).[6]

9   **IV.   Conclusion.**

10          For the foregoing reasons, the SEC requests that this Court deny Movant's motion to quash

11   the administrative subpoena to Google and order Google to comply with the subpoena forthwith.

12   Dated:  September 2, 2011

13

14                                                          ___/s/___Sarah Hancur_____
                                                            MELINDA HARDY (Admitted to DC Bar)
15                                                          SARAH HANCUR (Admitted to DC Bar)
                                                            U.S. Securities and Exchange Commission
16                                                          Office of the General Counsel
                                                            100 F Street, NE, Mailstop 9612
17                                                          Washington, DC 20549
                                                            Telephone:  202.551.5194
18                                                          Facsimile:  202.772.9263
                                                            hardym@sec.gov
19                                                          hancurs@sec.gov

20                                                          *Attorneys for Respondent*

21

22

23   [6] Even case law relating to private, civil disputes supports the view that First Amendment rights to
     anonymity must give way in certain circumstances.  For example, in *London v. Does 1-4*, No. 007-
24   15164, 2008 U.S. App. LEXIS 11428 (9th Cir. May 22, 2008), the Ninth Circuit affirmed the
     Northern District of California's ruling that there was no merit to the defendants' claim that
25   disclosure of email subscriber information violated their First Amendment rights to anonymous
     speech.  There, a wife needed to establish adultery in a fault-based divorce proceeding and had reason
26   to believe her husband had used email pseudonyms in the course of his infidelity.  In affirming the
     denial of the Does' motion to quash a subpoena directed to an internet service provider, the court
27   reiterated that in the Ninth Circuit, "exposure of some identifying data does not violate the First
     Amendment."  *Id.* at **4-5 (citing *People of State of Cal. v. FCC*, 75 F.3d 1350, 1362 (9th Cir.
28   1996)).