United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Movant,<br><br>　　v.<br><br>UNITED STATES OF AMERICA<br>SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>　　　　Respondent.<br>_____/ | No. 3: 11-mc-80208 CRB (NJV)<br><br>ORDER DENYING MOTION<br>TO QUASH SUBPOENA<br>(Doc. No. 1) |

**INTRODUCTION**

The district court has referred this motion to quash and all future discovery matters to this Court for determination. Doc. No. 15. Before the Court is John Doe's ("Movant") motion to quash an administrative subpoena served on third party Google, Inc. ("Google") by the United States Securities and Exchange Commission ("SEC"). The administrative subpoena seeks certain information of the type and in the manner authorized by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq.* ("ECPA"). The matter came on for hearing on October 4, 2011. Having carefully considered the papers filed by and the arguments of the parties, the Court **denies** the motion to quash. The SEC sufficiently has demonstrated that the information sought is relevant and material to an ongoing investigation.

**BACKGROUND**

The administrative subpoena at issue seeks to discover the identity of the owner of the email address "marketingacesinc@gmail.com," which the SEC has reason to believe may have been used to

tout stock for "Jammin Java Corp." as part of a "pump and dump" scheme.[1] "Pump and dump schemes generally 'involve the touting of a company's stock (typically microcap companies) through false and misleading statements to the marketplace. After pumping the stock, fraudsters make huge profits by selling their cheap stock into the market.'" Doc. No. 11 (SEC Opp'n to Motion to Quash) at 1-2 (quoting *United States v. Zolp*, 479 F.3d 715, 717 n.1 (9th Cir. 2007)). The SEC is investigating a rapid increase in Jammin Java's price, which coincided with the wide dissemination of online newsletters touting its stock. Doc. No. 11-1 (Declaration of Kevin De Jong in Opp'n to Motion to Quash ("De Jong Decl.")) ¶ 8. The SEC is investigating the online newsletters to determine whether they contained materially false information about Jammin Java, and/or failed to disclose the disseminator's financial interest in the company or compensation the company paid them. *Id.*, ¶ 9; *see also id.*, Ex. A (SEC May 13, 2011 Order Directing Private Investigation And Designating Officers To Take Testimony ("SEC Order")). The SEC represents that it "has obtained information indicating that an individual using the email address 'marketingacesinc@gmail.com' potentially belongs to a touter in the 'pump and dump' scheme." *Id.*, ¶ 10; *see also* Doc. No. 11 at 6 (the SEC "identified Movant's email address as one that potentially belongs to a touter in the 'pump and dump' scheme and issued an administrative subpoena to determine the identity of the potential touter. The identity is directly related to the SEC's investigation and could be crucial to taking action to address a multi-million dollar fraud"). Pursuant to its investigative powers and the ECPA, the SEC accordingly served an administrative subpoena on Google seeking the identity and contact information of the owner of the email address "marketingacesinc@gmail.com." *See* Doc. No. 11 at 1-2. Google gave the owner of the email address notice of the subpoena, the owner hired counsel, and counsel moved to quash the subpoena. Doc. No. 3 (Declaration of John Doe) ¶ 6.

## DISCUSSION

### A. Legal Standard

The Electronic Communications Privacy Act ("ECPA") requires "a provider of electronic communication service or remote computing device" to "disclose to a governmental entity the (A) name;

---

[1] The owner(s) of two other email addresses similarly have moved to quash administrative subpoenas the SEC issued to Google in relation to its Jammin Java investigation, and the three cases have been related. *See* Doc. No. 14 (relating Case Nos. 11-mc-80208 CRB and 11-mc-80209 CRB to 11-mc-80184 CRB).

2

(B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service . . . and types of service utilized; (E) telephone or instrument number or other subscriber number or identity . . .; and (F) means and source of payment for such service, of a subscriber when the governmental entity uses and administrative subpoena authorized by Federal or State statute . . . ." 18 U.S.C. § 2703(c)(2) (a provider "shall disclose to a governmental entity"). When a governmental entity seeks information under 18 U.S.C. § 2703(c), the ECPA specifically provides the government is not required to provide notice to the customer whose records are being sought. 18 U.S.C. § 2703(c)(3).

There is no provision in the ECPA allowing a customer whose non-content records are being sought to prevent disclosure, although where the governmental entity is seeking the *contents* of customer communications, customers may challenge disclosure. 18 U.S.C. § 2704(b)(1)(A).

**B. Analysis**

1. The Parties' Positions.

Movant argues the subpoena should be quashed because disclosure of his[2] identity would violate his right to anonymous speech, which is protected by the First Amendment to the United States Constitution. Movant argues that the SEC was required to attempt to notify him of the subpoena; that to prevail here, the SEC must produce "evidence sufficient to overcome a motion for summary judgment," that its investigation is supported by sufficient evidence, that the speaker's identity is relevant to the investigation, and that the SEC's investigative needs outweigh his First Amendment rights. Doc. No. 2 at 4-5. In support of this argument, Movant relies on cases involving discovery requests served by private parties in civil lawsuits. *See id.* (citing *In re Anonymous Online Speakers*, 2011 U.S. App. LEXIS 487 (9th Cir. 2011) (motion to compel deponent to reveal identity of certain anonymous online speakers alleged to have participated in "smear campaign" against class action defendant); *SaleHoo Group, Ltd. v. ABC Co.*, 722 F. Supp. 2d 1205, 1212 (W.D. Wash. 2010) (tortious interference); *Highfields Capital Mgmt. LP v. Doe*, 385 F. Supp. 2d 1210, 1216 (N.D. Cal. 2005) (defamation)). None of these cases, however, addresses the standard applicable to administrative

---

[2] While Movant is proceeding anonymously, based on his selection of the pseudonym "John," the Court will assume that Movant is male.

3

subpoenas seeking non-content account information pursuant to section 2703(c) of the ECPA in connection with a securities fraud investigation.

The SEC directs the Court to *Brock v. Local 375, Plumbers Int'l Union of America*, 860 F.2d 346, 348 (9th Cir. 1998), for the uncontroversial proposition that administrative agencies may investigate on the mere suspicion the law is being violated. *Brock* sets out the three-part standard of review courts in the Ninth Circuit apply in an agency subpoena enforcement proceeding: (1) has Congress granted the agency the authority to investigate; (2) have procedural requirements been followed; and (3) is the information sought relevant and material to the investigation? 860 F.2d at 348-49. *Brock* recognizes that First Amendment protections may apply to information sought by an administrative subpoena and provides that where a party opposing disclosure makes a *prima facie* showing of arguable First Amendment infringement, the burden will shift to the government to show the information sought is rationally related to a compelling governmental interest and the subpoena is the "least restrictive means of obtaining the desired information." *Brock*, 860 F.2d at 350.

2. The Appropriate Legal Standard For Compelling Disclosure Pursuant To An Administrative Subpoena.

Movant's argument relies exclusively on cases analyzing standards for disclosure in civil actions involving private parties embroiled in discovery disputes[3] -- not cases balancing the needs of a legitimate government investigation with the interest of a party wishing to remain anonymous. Congress recognizes the need for government agencies to investigate wrongdoing and accordingly has granted these agencies investigatory powers that are not available to civil parties. The ECPA, for example, allows government agencies like the SEC to issue administrative subpoenas requesting information from internet service providers ("ISPs") or to obtain court orders compelling disclosure of subscriber information. 18 U.S.C. § 2703(c).

Movant errs in arguing that courts have adopted the *SaleHoo/Anonymous Online Speakers* standard in anonymous speech cases of this nature. The SEC subpoena does not seek the content of any

---

[3] Contrary to Movant's argument (Doc. No. 16 at 4), *In re Anonymous Online Speakers v. U.S. District Court*, 2011 U.S. App. LEXIS 487 (9th Cir. Jan. 7, 2011) does not set out a standard applicable to criminal or governmental investigations. The Ninth Circuit there concluded that the lower court "appropriately considered the important value of anonymous speech balanced against a party's need for relevant discovery in a civil action." *Id*. at *17. Neither the district court nor the Ninth Circuit purported to apply the same standard outside of the civil action context.

4

of Movant's communications but rather "addressing information" that will allow the SEC to identify Movant. Movant contends that he has "chosen not to use my real name, or publish my identifying information, in connection with <marketingacesinc@gmail.com> in order to protect my privacy" (Doc. No. 3 (Doe Decl.) ¶ 4), but overlooks the fact that he voluntarily provided the information to Google when he signed up for his email account. The government thus seeks to compel disclosure of information Movant himself freely communicated to a third party. This type of disclosure is "routinely" ordered by courts. *In re § 2703(d) Order*, 2011 U.S. Dist. LEXIS 25322, ** 11-13 (E.D. Va. Mar. 11, 2011) (freedom of association does not shield persons from cooperating with legitimate government investigations, and routine compelled disclosure of non-content information that customer voluntarily provided to service provider does not form basis for First Amendment claim); *see also London v. Does 1-4*, 2008 U.S. App. LEXIS 11428, **4-5 (9th Cir. May 22, 2008) (affirming denial of motion to quash civil subpoena to ISP to reveal owner of email accounts because "exposure of some identifying data does not violate the First Amendment"). Other courts have weighed subscriber expectation of privacy when assessing First Amendment challenges to compelled disclosure of subpoenaed identifying information in civil cases, and concluded that Internet subscribers do not have a reasonable expectation of privacy in subscriber information they have already conveyed to their ISPs. *See, e.g., First Time Videos, LLC v. Does 1-500*, 2011 U.S. Dist. LEXIS 89044, **14-22 (N.D. Ill. Aug. 9, 2011) (analyzing motion to quash Rule 45 subpoena seeking discovery of addressing information of subscribers in copyright suit) (citing *Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65) (S.D.N.Y. 2004)). Similarly, courts hearing motions to suppress evidence under the Fourth Amendment routinely reject the argument that subscribers have a privacy interest in their account information. *See, e.g., United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008); *United States v. Li*, 2008 U.S. Dist. LEXIS 22283, *15 (N.D. Cal. Mar. 20, 2008) (ECPA draws important distinction between content and non-content information; subscribers have no reasonable expectation of privacy in IP addressing information); *Oregon v. Delp*, 178 P.3d 259, 264-65 (Ore. App. 2008) (no error to deny motion to suppress evidence obtained as result of FBI subpoena to service provider seeking name and address of suspect in criminal investigation); *Hawai'i v. Offerman*, 2008 Haw. App. LEXIS 390, **13-14 (Haw. App. July 17, 2008) ("Federal courts, which have examined this issue in the context of

information obtained pursuant to the ECPA, have uniformly held that a subscriber does not have a reasonable expectation of privacy in the subscriber information he or she provides to an internet service provider"); *United States v. Polizzi*, 549 F. Supp. 2d 308, 393-94 (E.D.N.Y. 2008) (subscriber lacks legitimate privacy interest in account information that was transmitted to ISP).

The Court finds no merit to Movant's argument that a different test should apply to this case than to the freedom of association at issue in *Brock*. The information sought by the SEC is explicitly permitted by the ECPA, and does not implicate First Amendment concerns.

### 3. The SEC Has Made The Required Showing.

The Court thus declines to apply the standard Movant advocates, and instead applies the *Brock* three-prong test, including the "relevant and material" standard. *Brock*, 860 F.2d at 349. During the hearing, Movant's counsel agreed that *Brock* was the most "analogous" case to the one at bar, and argued that the SEC had failed to establish only the third prong of the *Brock* test. The Court disagrees, and concludes the SEC has established all three prongs of the *Brock* test:

(1) Congress granted the SEC the authority to investigate potential violations of securities laws. In issuing the SEC Order and proceeding to investigate the Jammin Java stock fluctuations, the SEC is fulfilling its Congressional mandate. *See* 15 U.S.C. §§ 78u(a), (b); *see also SEC v. Jerry T. O'Brian, Inc.*, 467 U.S. 735, 741-51 (1984).

(2) The SEC has followed the procedural requirements for serving an administrative subpoena. Movant originally challenged the SEC's failure to provide him advance notice of the subpoena (Doc. No. 2 at 6), but appears to have abandoned this argument by the time of the hearing. The ECPA specifies that the SEC need not provide notice of an administrative subpoena seeking this type of non-content information. 18 U.S.C. § 2703(c)(3). Movant's argument also goes against the United States Supreme Court's holding outside of the ECPA context that the SEC need not inform the target of its investigation when it issues a third party subpoena. *See Jerry T. O'Brian*, 467 U.S. at 742-47. Insofar as a government agency seeks only identifying information for a customer, as opposed to the contents of a customer's communication[4], the agency need not provide the customer any notice that it is seeking

---

[4] The ECPA draws a significant distinction between content information and non-content (or "addressing") information, and provides far greater protection to former than it does to the latter. In order to obtain content information, an agency must proceed either by warrant (which was obtained under applicable rules of criminal procedure), or by subpoena, with notice to the subscriber. *See* 18

6

1  records pursuant to 18 U.S.C. § 2703. *See SAMS v. Yahoo!, Inc.*, 2011 U.S. Dist. LEXIS 53202, **20-
2  21 (N.D. Cal. May 18, 2011) (noting that notice is not required where government seeks addressing,
3  non-content information from ISP). Unless the government agency successfully applies for an order
4  sealing the subpoena, ISPs may provide their subscribers with notice, as Google did here.

5   (3) Movant argues that the SEC has not sufficiently established the relevance of his email
6  address to the investigation. Doc. No. 2 at 4-5. In opposition to the motion, the SEC represents that it
7  "has obtained information indicating that an individual using the email address
8  'marketingacesinc@gmail.com' potentially belongs to a touter in the 'pump and dump' scheme." Doc.
9  No. 11-1 (De Jong Decl.) ¶ 10; *see also* Doc. No. 11 at 6 (the SEC "identified Movant's email address
10 as one that potentially belongs to a touter in the 'pump and dump' scheme and issued an administrative
11 subpoena to determine the identity of the potential touter. The identity is directly related to the SEC's
12 investigation and could be crucial to taking action to address a multi-million dollar fraud"). The Court
13 notes that Kyle De Jong's Declaration was submitted under penalty of perjury. In addition, during the
14 hearing, counsel for the SEC testified that the SEC had investigated web-sites where the touts had
15 appeared and tracked the email addresses of individuals who had participated in setting up those web-
16 sites. "Marketingacesinc@gmail.com" was involved in setting up the web-sites and/or setting up email
17 blasts that contained touts for Jammin Java.

18  There is no support for Movant's argument that the SEC cannot investigate the ownership of the
19 "marketingacesinc@gmail.com" address because the SEC Order does not identify that address,
20 "connect" Doe to the Jammin Java investigation, or establish that securities laws have been violated.
21 Doc. No. 2 at 4-5. The SEC has "broad authority" to investigate "possible violations" of federal
22 securities laws. *Jerry T. O'Brian*, 467 U.S. at 741, 743, 745 (SEC investigatory powers are
23 "expansive"); *Carrillo Huettel, LLP v. SEC*, 2011 WL 601369 (S.D. Cal. Feb. 11, 2011) (denying
24 motion to quash subpoena for bank records of law firm where SEC had evidence that law firm
25 represented individuals being investigated and also "may" have been involved in violation itself). For
26 example, the SEC in conducting investigations "which, in the opinion of the Commission, are necessary
27 and proper for the enforcement" of the Securities Act and may "require the production of any books,
28

U.S.C. § 2703(a) (warrant only method of obtaining content that has been in electronic storage for 180 days or less), (b) (warrant or subpoena can be used to obtain content in remote computing service).

7

1 papers, or other documents which the Commission deems relevant or material to the inquiry." 15 U.S.C.
2 § 77s(c). The Commission may "make such investigations as it deems necessary to determine whether
3 any person has violated, is violating, or is about to violate" any SEC rules or regulations, and may
4 demand to inspect any documents "the Commission deems relevant or material to the inquiry." 15
5 U.S.C. §§ 78u(a), (b). The SEC thus has wide latitude to investigate whether any "persons or entities"
6 potentially have violated the Securities Act of 1933 or the Securities Exchange Act of 1934. Doc. No.
7 11-1 (De Jong Decl.) ¶¶ 2-4.

8 Nor does the SEC need to offer evidence that the owner of the email address
9 "marketingacesinc@gmail.com" is related to its investigation in order to acquire the requested
10 information. *See Jerry T. O'Brian*, 467 U.S. at 745 (noting that the SEC "often undertakes
11 investigations into suspicious securities transactions without any knowledge of which of the parties
12 involved may have violated the law," for example when trading activity suggests insider information
13 may have been used but the SEC "may have no idea which (if any) of the thousands of purchasers had
14 improper access to insider information"); *see also United States v. Morton Salt*, 338 U.S. 632, 642-43
15 (1950) (a federal agency "can investigate merely on the suspicion that the law is being violated, or even
16 just because it wants assurance that it is not" and is not precluded from engaging in "fishing
17 expeditions" in the same manner litigants in courts are). The SEC only need show that the information
18 it seeks is relevant to its investigation of a potential violation, and when assessing the validity of an
19 agency subpoena "the notion of relevancy is a broad one." *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir.
20 1982). An administrative subpoena will survive a relevancy challenge as long as the information
21 requested "touches a matter under investigation." *Elrod*, 674 F.2d at 613 (internal quotation omitted).
22 The identity of a potential touter of the Jammin Java stock "touches" the SEC's Jammin Java
23 investigation and thus is relevant.

24 Finally, while Movant has a First Amendment right to participate in anonymous speech in online
25 fora (Doc. No. 16 at 4-5), courts repeatedly have concluded that identifying information, at least in the
26 context of valid government investigations, is not subject to First Amendment (or Fourth Amendment)
27 protection. *See supra*, pp. 4-6. Movant thus fails to establish a *prima facie* showing of First
28 Amendment infringement under *Brock*, and the burden does not shift to the SEC to establish a

compelling interest exists.  *Brock*, 860 F.2d at 350.

## CONCLUSION

Movant has not established that his addressing information is protected under the First Amendment, and the SEC sufficiently has established that the ownership of the email address "marketingacesinc@gmail.com" is relevant to the Jammin Java investigation.  Accordingly, the motion to quash the subpoena directed at Google requesting this information is denied.

Dated:  October 4, 2011

NANDOR J. VADAS
United States Magistrate Judge