```
                                      Pages 1 - 19

                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nandor J. Vadas, Magistrate Judge

                                  )
 John Doe,                        )
                                  )   No. C11-80208 CRB
           Plaintiff,             )
      vs.                         )
                                  )
 Securities and Exchange          )
 Commission,                      )
                                  )
           Defendant.             )
                                  )
 John Doe,                        )
                                  )   No. C11-80184 CRB
           Plaintiff,             )
 vs.                              )
                                  )
 Securities and Exchange          )
 Commission,                      )
                                  )
           Defendant.             )
                                  )
                                  )
 John Doe,                        )
                                  )   No. C11-80209 CRB
           Plaintiff,             )
 vs.                              )
                                  )
 Securities and Exchange          )
 Commission,                      )
                                  )
           Defendant.             )
                                  )

                    Eureka, California
                    Tuesday, October 4, 2011

  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                         RECORDING


         (APPEARANCES CONTINUED ON FOLLOWING PAGE)
```

**APPEARANCES:**

For Plaintiff:

        Newman Du Wors LLP
        1201 Third Avenue
        Suite 1600
        Seattle, WA 98101
**BY: KEITH PATRICK SCULLY**
**ATTORNEY AT LAW**

        Kronenberger Burgoyne, LLP
        150 Post Street, Suite 520
        San Francisco, CA 94108
**BY: JEFFREY MICHAEL ROSENFELD**
**ATTORNEY AT LAW**

For Defendant:

        Office of the General Counsel
        Securities and Exchange Commission
        100 F St. NE
        Washington, DC 20549-9612
**BY: MELINDA HARDY**
**ASSISTANT GENERAL COUNSEL**

Transcribed By:    Stacy Wegner
                   Transcriber
                   smwtyping@yahoo.com
                   (859) 539-2802

```
 1  Tuesday, October 4, 2011                              10:05 a.m.
 2
 3          TRANSCRIBER'S NOTE:   Audio transmission begins
 4  mid-sentence.
 5          MS. HARDY:  -- with me is Kyle De Jong.
 6          THE COURT:  Counsel for the Movants -- moving
 7  parties?
 8          MR. ROSENFELD:  This is Jeff Rosenfeld, counsel for
 9  John Doe, Movant.
10          MR. SCULLY:  Good morning, Your Honor.  I'm Keith
11  Scully of Newman Du Wors, counsel for the John Doe Movant on
12  the Jeffrey G. Hooke email accounts and the John Doe Movant
13  on the Marketing Aces (inaudible) Gmail accounts.
14          THE COURT:  All right.  And so that would be 80208;
15  is that correct?
16          MR. SCULLY:  Correct.
17          THE COURT:  All right.  And Mr. Rosenfeld, you're
18  representing the Doe in 80184?
19          MR. ROSENFELD:  That's correct.
20          THE COURT:  All right.  Well, why don't the -- the
21  moving parties -- it's -- it's your motion to quash, so go
22  ahead and add anything you'd like at this time.  I have
23  reviewed the papers.  I do have some questions.
24          MR. ROSENFELD:  Okay.  This is Jeff Rosenfeld on --
25  in the 80184 case.
```

1    As Your Honor is aware, we represent John Doe, who
2    is the registrant and user of the aurorapartners gmail --
3    @gmail.com email address.
4        He uses this email address to contribute to
5    internet discussion boards and blogs, and specifically to
6    post anonymous political speech on the internet, and he
7    specifically postings anonymous to re -- avoid repercussions
8    for his postings and his political views.
9        As Your Honor is also aware, the SEC has sought to
10   reveal my client's identity, and specifically in connection
11   with the Jammin Java investigation (Inaudible - - due to
12   simultaneous colloquy.)
13       **THE COURT**: But not --
14       **MR. ROSENFELD**: -- the SEC --
15       **THE COURT**: But not the content of the -- of the
16   communications, just the identity?
17       **MR. ROSENFELD**: That's correct. That is correct.
18   They have sought just to reveal my client's identity.
19   However, that alone would deprive my client of his First
20   Amendment right to speak anonymously.
21       **THE COURT**: Let me ask you, Counsel, and also Mr. -
22   - I believe, Mr. Scully. In relation to both these motions
23   to quash, neither party -- the SEC nor -- nor the Movants --
24   moving parties addresses the terms of the Google privacy
25   agreement or the terms of use between Google and the -- the -

1   -- the John Doe moving parties.
2          What's the moving parties' position regarding the -
3   - the import of the -- of the Google contract between your
4   party and Google, which basically, I believe, indicates that
5   -- that some, if not all, of this information is to be -- to
6   be revealed if requested?
7          **MR. ROSENFELD:**  This is Jeff -- Jeff Rosenfeld
8   again.  You know, the -- that sort of provision is common in
9   an online forum, including that sponsored by Google.
10  However, when a person (inaudible) right to speak to
11  anonymously arises, you know, that would trump Google's
12  policy.
13         And in particular, if Google's policy terms and
14  conditions were to prevail here, not only my client, but
15  anybody that sought to speak anonymously in the online world
16  would be deprived of their First Amendment right to speak
17  anonymously because this -- this is the only avenue --
18         **THE COURT:**  But --
19         **MR. ROSENFELD:**  -- that you would have to do so.
20         **THE COURT:**  But -- but -- but Counsel, courts who -
21  - that heard motion to suppress evidence under the Fourth
22  Amendment routinely reject the argument that subscribers have
23  a privacy interest in their account information.
24         *United States Polizzi*, Eastern District of New
25  York, 2008.  *United States versus Li*, Northern District,

1  March of 2008.  I think the EP -- the ECPA, which is the --
2  the guiding act here, draws important distinction between
3  content and non-content information.
4          Subscribers appear not to have a reasonable
5  expectation of privacy in IP addressing information.  *Oregon*
6  *versus Delp*.
7          **MR. SCULLY**:  Your Honor, this is Keith Scully.
8  Those -- those are Fourth Amendment cases.
9          **THE COURT**:  I understand.
10         **MR. SCULLY**:  Our argument is -- is predicated on
11 the First Amendment, and I'd argue that the closest case is
12 *Brock v. Local 375*, which is a Ninth Circuit case about an
13 administrative subpoena from the Department of Labor, which
14 sought the identities of contributors to a fake political
15 fund, and that's almost squarely on point with our fact here.
16 It's not -- it's not -- excuse me -- it's not a political
17 fund, but it is a private anonymous online email account.
18         **THE COURT**:  Well, and I understand that.  And *Brock*
19 at 860 F.2d 349 establishes a -- a three-prong test; does it
20 not?
21         **MR. SCULLY**:  Correct.
22         **THE COURT**:  And why don't we discuss then, if you
23 believe that the administrative subpoenas fail on the *Brock*
24 test, what it is that the SEC has failed to establish on one
25 or all of the *Brock* tests?

1      **MR. SCULLY:**  Your Honor, the SEC fails the third
2  prong of the *Brock* test.  That prong states that the
3  information sought must be rationally related to a compelling
4  Governmental interest.
5      And the SEC's argument is that it is enough to just
6  raise the banner of fraud -- say the Government has an
7  interest in investigating fraud, therefore, we're done here.
8  But what *Brock* actually requires them to do is prove that the
9  specific information is rationally related to a specific
10 governmental interest.  If all they can do is -- if all they
11 have to do is say fraud, then that just means nothing.
12     What instead they have to do is present evidence
13 that they are investigating an actual violation of law by
14 proving to you that that has occurred and to present evidence
15 that this information is rationally related to that actual
16 violation of law.
17     **THE COURT:**  What about those cases like *SEC versus
18 Jerry T. O'Brian*, *Carrillo Huettel, LLP versus SEC*, which
19 talk about the SEC's broad authority to investigate possible
20 violations of federal securities law?
21     **MR. SCULLY:**  Well, that -- we're not questioning
22 the -- it's not -- that's the second factor of the *Brock*
23 test.  They unquestionably have broad authority to
24 investigate, but they have to prove that what they are doing
25 before they breach a constitutional right is rationally

1  related to the specific investigation. Now, I'll -- I'll
2  defer to Mr. Rosenfeld on the SEC's evidence that there has
3  been a violation here.
4          **MR. ROSENFELD**: Yeah. (Inaudible - - due to
5  simultaneous colloquy.)
6          **THE COURT**: Well -- well, then -- but -- but then
7  if you're -- if we're -- if we're focusing on that -- I mean,
8  I'm looking at also Equal Employment Opportunity Commission
9  versus *Elrod* the Seventh Circuit case from '82 that -- that
10 indicates, you know, that an administrative subpoena will
11 survive a relevancy challenge as long as the information
12 requested touches a matter under investigation.
13         **MR. SCULLY**: Well, right. And our argument is that
14 they have to prove that there is a matter under
15 investigation, not just by saying there is, but by proving
16 fact violations of securities laws have -- actually have
17 occurred.
18         And they also have to prove that -- I mean, I would
19 argue this more than touches, but they have to at least prove
20 that this information touches -- that it is rationally
21 relevant to it, and the evidence they've presented is simply
22 nothing.
23         There's -- there have been allegations from an
24 attorney that he believes that email -- these email accounts
25 are rationally related to the investigation. And then there

```
 1  are three facts about Jammin Java, which allege that there
 2  was, in fact, a securities violation, but those three facts
 3  don't prove that any law violations have occurred.
 4              There is no evidence of misrepresentation.  There's
 5  no evidence of false statements.  We don't even know what
 6  these communications were, let alone that they said something
 7  false or materially misleading.
 8              THE COURT:  Well, they're -- the -- the SEC is
 9  alleging what's -- what's commonly called a pump and dump
10  scheme.
11              MR. SCULLY:  Right.  And their evidence in support
12  of that is that the Jammin Java company stock went up and
13  then went down.  They claim there were communications,
14  although, have not presented them to the Court.
15              And then they claim that Jammin Java was a shell
16  company, but what they don't tell you, although, their
17  actions do, is Jammin Java had a valuable trademark, a coffee
18  farm, and it spent a ton of money on advertising.
19              It is possible that there were securities
20  violations therein, but there's no proof that there were.
21              THE COURT:  All right.  Anything further,
22  gentlemen?
23              MR. ROSENFELD:  Not from me.  Thank you.
24              MR. SCULLY:  And not from me, Your Honor.  Thank
25  you.
```

1             **THE COURT:** All right, Counsel.
2             **MS. HARDY:** Thank you.  I believe that it's good to
3    recognize that they agree that the *Brock* test does apply
4    here.  I think that that is what the Ninth Circuit has
5    established is the -- the proper test in this context when
6    it's a -- an administrative investigation and not civil
7    discovery.
8             The SEC, we contend, has -- not only has the SEC
9    satisfied all the elements of the *Brock* test, but even before
10   you get to that is -- the first issue is whether the Movants
11   have established a prima facie case of arguable First
12   Amendment infringement.
13            And in *Brock*, the Court said that to do that the
14   Movant must present objective facts that go beyond broad
15   allegations or subjective fears, and here --
16            **THE COURT:** Well, let me first ask a question.  Is
17   this a criminal investigation?
18            **MS. HARDY:** No.  The SEC is a -- does civil
19   investigations.  It sometimes refers its matters to the
20   Department of Justice for criminal cases because basically
21   violations of our statutes can be criminal violations, but we
22   are a civil agency.
23            **THE COURT:** But then let me ask you.  You're moving
24   for this under 18 U.S.C. 27 -- 2703(c), correct?
25            **MS. HARDY:** Right.

1    **THE COURT:**  "In order to obtain a court order
2    compelling subscriber records, not the content of subscriber
3    communication, the Government agency need only offer specific
4    and articulable facts showing there are reasonable grounds to
5    believe that records or other information sought are relevant
6    and material to an ongoing criminal investigation."  18
7    U.S.C. 2703(d).
8    **MS. HARDY:**  The Section 2703 also allows any
9    Government entity to get things through an administrative
10   subpoena.  It doesn't apply only to criminal investigations.
11   Under (c)2, which is -- which covers the identification
12   information that we're seeking down, sort of at the end of F
13   -- but it actually applies to the whole section -- that
14   agencies can get that information when the Government agency
15   uses an administrative subpoena authorized by a federal or
16   state statute -- or a federal or state grand jury or trial
17   subpoena.  So there's no restriction there on it being a
18   criminal investigation or a criminal agency.
19   **THE COURT:**  Oh, usually a grand jury subpoena is a
20   criminal subpoena.  It's for criminal --
21   **MS. HARDY:**  Right.  Right.
22   **THE COURT:**  -- criminal investigation.
23   **MS. HARDY:**  That definitely would be a criminal,
24   but the -- the first part of that that -- that administrative
25   subpoena authorized by a federal or state statute.  So the

1  SEC's statutes authorize it to issue administrative subpoenas
2  in the course of investigations.
3         **THE COURT**: All right. Go ahead.
4         **MS. HARDY**: So then back to the prima facie case,
5  the Movants haven't provided anything that goes beyond broad
6  allegations or subjective fears. The Aurora Partners, John
7  Doe, in case 80184 generally talks about posting opinions on
8  blogs, as he did here today, but doesn't say anything about
9  why the SEC's getting identification information for a
10 confidential nonpublic investigation --
11        **THE COURT**: Were --
12        **MS. HARDY**: -- would actually chill that.
13        **THE COURT**: Were there newsletters or other things
14 mentioning Jammin Java written by or connected to
15 aurorapartners@gmail?
16        **MS. HARDY**: So right now we -- our evidence
17 indicates that the Aurora Partners address was -- was
18 involved in the touts, so the touts did not actually come
19 from that email address. The touts were on a website, and
20 blast emails were sent out, but then as we've done our
21 investigation, the email address is all three of them were --
22 were used in getting the websites and the email address that
23 was used to send out the touts.
24        **THE COURT**: Okay. Why don't you explain that a
25 little bit more?

1     **MS. HARDY:** Okay. Just to -- going into a little
2  bit of detail. And because this is a confidential
3  investigation, we don't want to go into all the details --
4     **THE COURT:** I understand that, but to -- to --
5     **MS. HARDY:** -- publicly but -- so the touts were on
6  a website called thelautnerletter.com and on other websites,
7  and they were also sent out through blast emails. So in our
8  investigations --
9     **THE COURT:** This is the pump part?
10    **MS. HARDY:** Right. So in our investigation, we've
11 done analyses of these websites and email addresses to get
12 all the information we can about who signed up for them, how
13 they were -- came into existence.
14    And in providing subpoenas -- or serving subpoenas
15 on companies involved in providing internet services and
16 others, we've obtained various information, including the
17 three email addresses at issue here, so to find the people
18 behind these websites and these email addresses -- want to
19 know who these email addresses belong to.
20    **THE COURT:** All right. Thank you.
21    **MS. HARDY:** Just again, the Marketing Aces and
22 Jeffrey Hooke, John Does, their showing of their First
23 Amendment interest is -- is even less.
24    They say nothing more than that they obtained the
25 addresses to communicate anonymously over the internet, and

1  again, have said absolutely nothing about how the SEC just
2  getting their identification information would -- would chill
3  anything.
4      **THE COURT**: Well, let me ask you.  I asked Counsel,
5  and they didn't feel it had any -- any relevance to these --
6  to these subpoenas, but what about the contracts between
7  Google and the John Does?
8      **MS. HARDY**:  Yeah.  We have -- I don't -- I don't
9  think that we view that as being particularly relevant to --
10 to this issue either.  I assume that, as you mentioned, that
11 under the Fourth Amendment there are privacy --
12     **THE COURT**:  Right.
13     **MS. HARDY**:  -- rights and that -- so we have full
14 access to this, and I think that does go to show their
15 limited interest in this.
16         And there are plenty of cases that once you pass
17 your information on to a third party, your privacy interests
18 go way down.
19     **THE COURT**:  So what -- what -- so it's your
20 position that what you've -- what you've described this after
21 -- this morning touches on the matter under investigation and
22 sufficient under *Elrod*?
23     **MS. HARDY**:  Right.  This is -- I think we've -- so
24 if we have to get to satisfying our burden, we think that we
25 have easily satisfied that.  We have a legitimate

1   investigation.  I don't think anyone has contested this, so
2   when we see the kind of trading patterns and the touts that
3   we've seen here, that we have an obligation to investigate
4   those.
5           And we need to conduct that investigation to know
6   who was behind it and to -- to find the people involved, and
7   this is simply trying to find the people so we know who was
8   responsible for -- for the potential violations of laws.
9           And as we gather that information and other
10  information, we will determine whether there were actually
11  violations and whether an enforcement action is appropriate,
12  but I think that we're certainly not aiming to -- to quash
13  protected speech.  We are aiming to stop wrongdoing and to
14  protect investors in the stock market.
15          I think, again, as you've mentioned, it's also
16  relevant in the *Brock* test that we're using the least
17  restrictive means available.  We're just seeking
18  identification information.  This isn't about the content of
19  emails.  This is just finding people that we can talk to and
20  get further information to figure out what happened here.
21          **THE COURT**:  All right.  Anything further?
22          **MS. HARDY**:  No, thank you.
23          **THE COURT**:  All right.  Just brief rebuttal on the
24  part of the moving parties.
25          **MR. ROSENFELD**:  Thank you, Your Honor.  This is

1  Jeff Rosenfeld.  The SEC talks about the connection or the
2  touch between my anonymous client and their investigation and
3  the evidence that they have, but they haven't produced any of
4  this evidence.
5          If they have it, why haven't they produced it?  All
6  they've produced is a statement by a staff attorney
7  describing a belief that my client is connected.  If they
8  discovered my client's email address connected to an improper
9  discussion group, then produce that -- that document.
10         I don't -- I don't understand why they haven't
11 produced that.  That has to be a minimum evidentiary burden
12 before they just strip my client's anonymity.
13         **THE COURT**:  The -- the -- the threshold here is --
14 is enormously low.  And what -- what Counsel has indicated
15 is, you know, part of this is also investigative in nature
16 and -- and the -- the investigating agency, I think, under
17 2703 has a right to withhold as much information as they
18 wish, except to meet the -- the -- the burden of the -- of
19 the three prongs of *Brock*.
20         And those -- that burden is extremely low in these
21 -- in these situations.  The threshold here is extremely low.
22 And I think the question then becomes, and one that I'd like
23 you perhaps to focus on again, is whether or not the SEC has
24 -- has met its -- its -- its burden under *Elrod* on the third
25 -- the third prong.

1     **MR. SCULLY:**  Your Honor, this is Keith Scully.  So
2  we disagree with the SEC that the burden is all that low.  We
3  think anonymous online speakers -- that -- that it just has
4  to be a level sufficient to survive summary judgment.
5           But even if you want to drop this as low as you can
6  go, even if you want to drop it to probable cause or
7  something like that --
8     **THE COURT:**  It's the same as probable cause
9  (inaudible).
10    **MR. SCULLY:**  -- it's an allegation from an
11 attorney, what you just heard from the SEC's counsel, not
12 under oath and with no specifics, no details, other than
13 "Trust us, we know."  That's not sufficient under any
14 possible standard.
15          Can you imagine a police officer coming into court,
16 raising his hand and saying, "My probable cause is I think
17 there was a murder in this house.  Please give me a search
18 warrant to go in and get it"?
19    **THE COURT:**  No.  But on the information and be --
20    **MR. SCULLY:**  (Inaudible - - due to simultaneous
21 colloquy.)  I'm sorry?
22    **THE COURT:**  But on information and belief, they can
23 receive telephone records, which are similar to the records
24 that are looking here -- that are being searched -- sought
25 for here at an extremely reduced level of judicial scrutiny.

1     **MR. SCULLY:** The -- the level of judicial scrutiny
2  isn't just they have to stand up and wave the flag of fraud
3  and say "trust us." I mean, that -- there might as well not
4  be judicial review. That is no judicial review.
5     **THE COURT:** All right. Anything further,
6  gentlemen?
7     **MR. SCULLY:** Not from me, Your Honor.
8     **THE COURT:** All right.
9     **MR. ROSENFELD:** Not from me either. Thank you.
10    **THE COURT:** Just briefly, and I'll take it under
11 submission.
12    **MS. HARDY:** Just to point out that we have
13 submitted a declaration that is under oath and -- and is one
14 that -- that, I think, as you've recognized, that the -- at
15 this stage when we're conducting the investigation, we don't
16 have evidentiary hearings.
17    The issue is is there a good reason for the
18 Government to be doing this, and we don't need to get into
19 the underlying evidence to establish that, and that's well
20 established in many cases, back as far as *Morton Salt* decided
21 by the supreme court, I think, back in the 40s that this is
22 the way it's handled.
23    **THE COURT:** All right. I'll take it under
24 submission. Thank you.
25    **MS. HARDY:** Thank you.

1          **MR. SCULLY:**   Thank you.

2          **MR. ROSENFELD:**   Thank you, Your Honor.

3          **THE COURT:**   Thank you, Counsel.

4             (Proceedings adjourned at 10:26 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____    10/14/11
Signature of Transcriber           Date